IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DARNELL KINLAW, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. PWG-14-1128 |
| OFFICER SEAN WELSH, et al., | * | |
| Defendants | * | |

\*\*\*

## MEMORANDUM

Pending is defendants' motion to dismiss, or, in the alternative, motion for summary judgment, as supplemented. ECF 16, 18, 20 & 21. Plaintiff opposes the motion. ECF 19. Upon review of the pleadings filed, I find a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2014).

### Background

Plaintiff, an inmate confined at North Branch Correctional Institution (NBCI), alleges that on June 27, 2013, he was assaulted by another inmate. Plaintiff states that while being escorted from the recreation cages in the segregation unit of NBCI, he heard footsteps quickly approaching behind him. ECF 1, at 2. He states that his efforts to turn to see what was coming were thwarted by the escorting officer. Plaintiff was attacked by another inmate. Plaintiff reports being "maced" and simultaneously stabbed in his left jaw. The escorting officer continued to hold plaintiff while the attacker continued to stab plaintiff. *Id.* Plaintiff states that he finally was able to pull away from the escorting officer, and slipped and fell, hitting his head on the ground, which rendered him briefly unconscious. When he came to, he was still being stabbed. He reports that none of the officers attempted to seize the attacker. *Id.*

After the attack, plaintiff was taken by correctional staff to see a nurse who advised him he had been stabbed at least 27 times. Plaintiff indicates that during his medical treatment the guards "joke[d] and play[ed] around." When the nurse advised the officers that plaintiff was in better shape than they thought they replied, "Damn!" *Id.*

Plaintiff was sent to Western Correctional Institution ("WCI") infirmary without having been provided an opportunity to shower off the mace. Plaintiff states that his wounds became infected from the mace. *Id.* at 2–3.

The following day, plaintiff was seen by a physician who advised him that he should have been taken to an outside hospital given the severity of his head injury. *Id.* at 3. Plaintiff states he was stabbed in the head seven times and suffered a fractured skull. He further states that the left side of his body has severe nerve damage and his arm "consistently goes out." Plaintiff was prescribed Tylenol 3 and placed on bed rest. *Id.*

A few days after the incident, Lieutenant Smith, plaintiff's housing unit manager, called him to his office and advised plaintiff that his attacker was a member of the Aryan Brotherhood and "they thought [plaintiff] was a member of a rival gang." *Id.* Plaintiff states that he was unknowingly tagged as a member of a rival gang. Plaintiff claims that the institution was aware of a threat to rival gang affiliates and no members of the Aryan Brotherhood were to receive recreation with any member of a rival gang. *Id.*

Defendants provide the following information. On June 27, 2013, Welsh was assigned to Housing Unit 1 D Wing. ECF No. 15, Ex. 2, pp. 23, 32–34. At approximately 1:02 a.m. he was assigned to escort inmates from the D Wing Recreation Cages back to their cells. *Id.* Welsh approached inmate Jones in order to escort him and observed what appeared to be a shirt in Jones' hand. During the escort back to Jones' cell, Jones suddenly lunged away from Welsh,

breaking free of Welsh and slipping his right hand out of the restraints. *Id.* Jones ran forward and assaulted plaintiff with a homemade weapon. *Id.*, pp. 23, 26, 32–34. Officer Michael Baer, who was escorting inmate Rivers, observed Jones slip the handcuffs and assault plaintiff. *Id.*, p. 24. Officers directed Jones to stop the assault and, when he failed to do so, sprayed pepper spray, but Jones continued the assault. *Id.*, Ex. 2, p. 26.

Welsh ran after Jones, directing him to drop the weapon and stop the assault, Jones refused to comply. *Id.*, Ex. 2, pp. 23, 32–34. Welsh applied pepper spray in order to gain control of the inmates but Jones continued to assault plaintiff. Inmate Rivers, no longer under escort, approached Officer Fetters from behind. *Id.*, Ex. 2, pp. 23, 25. Welsh directed Rivers to lie down on the ground but Rivers refused and continued toward Fetters. *Id.*, Ex. 2, pp. 32–34. Welsh applied pepper spray toward Rivers, who then moved to the back of the wing, where Officer Baer secured Rivers in the D Wing recreation area. *Id.*, Ex. 2, pp. 24–25.

Jones continued assaulting plaintiff and Welsh sprayed more pepper spray. *Id.* Baer arrived and also applied several bursts of pepper spray, directing Jones to drop the weapon and lie on the ground. *Id.*, Ex. 2, pp. 25–26. Jones complied. Fetters then reapplied handcuffs to Jones and escorted him to the B Wing education cages with the assistance of Officer Turner. *Id.*

After the incident, plaintiff, Jones, and Rivers all refused to provide statements regarding the altercations. *Id.* pp. 35–37.

After the incident, plaintiff was evaluated by Nurse Blank, treated, and sent to the WCI infirmary. Blank determined that plaintiff's injuries were not life-threatening and his medical care could be managed in the infirmary. *Id.*, pp. 41–43.

An internal investigation of the incident failed to determine how or where Jones took possession of the weapon. The video from the recreation cages reportedly was of poor quality.

*Id.*, Ex. 2, p. 47. Lieutenant William Scrithfield interviewed Jones and inquired how he removed the handcuffs. Jones advised that "It doesn't matter how tight you put the cuffs on me, I can get out of them." *Id.*, Ex. 2, pp. 8–9. Scrithfield determined that the weapon was made from a piece of the bunk or shelving from within the housing unit. *Id.*, Ex. 2, p. 9. Staff discovered several bunks had been tampered with. *Id.*, Ex. 2, pp. 9, 19, 47.

Plaintiff was interviewed on July 12, 2013, by Internal Investigation Unit ("IIU") Detective Robert Fagan. Plaintiff told Fagan that he did not remember what happened or know who did it. He further stated that he was not interested in talking about the incident. *Id.*, Ex. 2, p. 9.

Correctional Officers Derek Baer, Scott Fetters, Sean Welsh, Michael Baer, Bruce Crowe, and Matthew Hill submitted reports relative to the incident which were reviewed as part of the IIU investigation. Each reported witnessing Jones spontaneously assault Kinlaw with a homemade weapon, the officers' efforts to stop the assault and Jones' refusal to comply with orders until multiple bursts of pepper spray were employed by several of the responding officers. *Id.*, Ex. 2, pp. 7, 9, 25–31.

On July 7, 2013, plaintiff filed ARP NBCI-1812-13 complaining about the assault. *Id.*, Ex. 4. Plaintiff refused to be interviewed during the ARP investigation.[1] *Id.*, Ex. 4, p. 3. Welsh was interviewed as part of the ARP investigation and confirmed that he was assigned to escort inmates from recreation back to their cells on the day the incident. *Id.*, p. 3. Welsh stated that he placed handcuffs on Jones in the prescribed manner and that he noticed Jones had a white shirt in his hand. Welsh stated it was not unusual for inmates to carry sweaty shirts when returning from recreation. *Id.*, pp. 3–4, 6–7. Welsh escorted Jones from D wing recreation toward B wing with

---

[1] Plaintiff maintains that either he was not asked about the assault and/or he did not trust the officers investigating the assault as they were the same officers who he alleges failed to protect him; therefore he did not participate in the investigation. ECF 19, p. 2

a "hands on escort." *Id.*, p. 6. Welsh was not aware prior to or during the escort that Jones was in possession of a weapon. He reiterated that Jones quickly and violently pulled from his grasp, slipped his right hand out of the handcuffs, and ran down D wing, producing a homemade weapon with which he began stabbing plaintiff who was being escorted ahead of Welsh and Jones. *Id.*, pp. 7–8. Welsh stated that he pursued Jones and, when he caught up with him, applied several bursts of pepper spray. Additional officers arrived and sprayed more pepper spray onto the inmates; however, Jones continued his attack on plaintiff. *Id.* Welsh avers that he did not assist, aid, or encourage an assault upon plaintiff by Jones or any other inmate. *Id.*, Ex. 1, p. 2. Welsh indicated during the ARP investigation that officers did not physically intervene in the assault as they, too, were adversely impacted by the pepper spray. *Id.*, Ex. 4, p. 4. He further avers that the information he wrote in the information and incident reports regarding the assault are true and accurate. *Id.*, Ex. 1, p. 1.

A review of the tier video tapes confirms the officers' versions of events. Jones can be seen slipping his hand out of the handcuff and running toward plaintiff. Within two seconds of Jones stabbing plaintiff, an officer applies a burst of pepper spray directly to Jones' face; however Jones does not cease the attack on plaintiff. Jones' attack continues for approximately two minutes while various officers surround plaintiff and Jones, direct Jones to stop the attack, and apply multiple bursts of pepper spray to the inmates. One officer slips and falls. Other officers are seen doubling over, and shielding their eyes, apparently from the effect of the pepper spray in the area.[2] *Id.*, Ex. 3 as supplemented.

---

[2] Plaintiff was provided an opportunity to review the tier tapes. ECF 20; ECF 21, Exs. 1 & 2.

Plaintiff's allegation that his escorting officer impeded his ability to defend himself finds no support in the record.[3] While the initial attack on Plaintiff was not captured by the tier camera, the tier camera shows Jones slipping his handcuffs and then, no more than three seconds later, Plaintiff running from Jones, clearly having broken free from his escort off-camera. *Id.*, Ex. 3 as supplemented. Immediately thereafter, an officer is seen applying pepper spray to both inmates in an apparent effort to stop the attack. *Id.* Plaintiff, the non-moving party, must establish the existence of a genuine issue of material fact by presenting evidence on which a fact-finder reasonably could find in his favor. Plaintiff has failed to submit any evidence to support his claim, or to put the central fact of this case—the alleged failure to protect—in dispute. *See generally Gray v. Spillman*, 925 F.2d 90 (4th Cir. 1991). Although the non-moving party may rely upon a verified complaint when allegations therein are based on personal knowledge, *see Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991), Plaintiff's complaint is not verified.

Inmates housed at NBCI on Housing Unit 1 are either on disciplinary or administrative segregation. *Id.*, Ex. 5. When an inmate in Housing Unit 1 is provided recreation he is handcuffed while in his cell and then escorted by a correctional officer from the cell to the recreation area which is a secure caged area. Only the inmate alone or the inmate and his cellmate are permitted in the same recreation cage. When recreation is completed the inmate is handcuffed and then escorted by a correctional officer to his cell. Plaintiff and Jones were not cellmates and therefore not placed in the same recreation cage for recreation. When an inmate has a known, verified enemy, the name is listed in Department of Public Safety and Correctional Services records. Plaintiff and Jones were not listed as enemies. *Id.*

---

[3] Plaintiff does not identify his escorting officer and has not named him as a defendant, and consequently he has not been served with the complaint.

On April 24, 2013, plaintiff advised Sergeant David Barnhart that he was a member of the Black Guerilla Family ("BGF") a security threat group ("STG"), but refused to sign the verification form. *Id.* Ex. 5. Plaintiff's DPSCS records for the offender function alert screen indicate that on April 24, 2013, plaintiff had a flag noting he was a member of the STG BGF. *Id.*, Ex. 2, pp. 10, 61–62. Jones' offender alert screen showed that on March 20, 2013, he was flagged as a member of the STG White Supremacists/Aryan Brotherhood "White Supr." *Id.*, pp. 10, 74. Welsh avers that at the time of the incident he was unaware that plaintiff was a verified member of any STG. *Id.*, Ex. 1, p. 1.

Defendants further offer that they are not trained as health care practitioners. Medical care of inmates is provided by private health care contractors. *Id.*, Ex. 1, p. 1. & Ex. 6. Defendants did not make any decision regarding the type of health care plaintiff should receive or whether plaintiff should receive care on site or at an outside facility. Defendants rely upon the medical expertise of the private health care contractors. Welsh avers that he did not interfere, delay, or deny plaintiff medical treatment. *Id.*, Exs. 1 & 6.

Lieutenant McKenzie avers that he searched the records of NBCI Administrative Remedy Office and there is no record plaintiff filed an ARP concerning his designation as a member of a STG. *Id.*, Ex. 7. Additionally there is no record that plaintiff filed any appeal of an administrative remedy process decision, nor, did plaintiff file any grievance with the Inmate Grievance Office.[4] *Id.*, Ex. 8 & 9.

## Analysis

Summary judgment properly is granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Meson*

---

[4] Plaintiff states that he did file an appeal but never received a response. ECF 19, p. 1.

*v. GATX Tech. Servs. Corp.*, 507 F.3d 803, 806 (4th Cir. 2007) (citing Fed. R. Civ. P. 56(c)). The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts. *See Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). If the moving party demonstrates that there is no evidence to support the non-moving party's case, the burden shifts to the non-moving party to identify specific facts showing that there is a genuine issue for trial. To satisfy this burden, the non-moving party "must produce competent evidence on each element of his or her claim." *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999). Although the court "must draw all reasonable inferences in favor of the non-moving party," that party "may not create a genuine issue of material fact through mere speculation, or building one inference upon another." *Id.*; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Runnenbaum v. NationsBank*, 123 F.3d 156, 163 (4th Cir. 1997). Indeed, the existence of only a "scintilla of evidence" is not enough to defeat summary judgment. *Anderson*, 477 U.S. at 251. Instead, the admissible evidentiary materials submitted must show facts from which the finder of fact could reasonably find in favor of the non-moving party. *Id.*

1. Respondeat Superior

Plaintiff's complaint against Warden Shearin and Housing Unit Manager Lieutenant Smith is based solely upon the doctrine of *respondeat superior,* which does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F. 3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Liability of supervisory officials must be "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F. 3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F. 2d 368,

372 (4th Cir. 1984)). Supervisory liability under § 1983 must be supported with evidence that (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff, (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices, and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994). Plaintiff has pointed to no action or inaction on the part of Warden Shearin or Lieutenant Smith that resulted in a constitutional injury, and accordingly, his claims against them shall be dismissed.

2. Failure to Protect

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). An inmate has an Eighth Amendment right to be protected from violence perpetrated by other prisoners. *Danser v. Stansberry*, 772 F.3d 340, 346 (4th Cir. 2014); *see also Farmer v. Brennan*, 511 U.S. 825, 833–35 (1994). In *Danser*, the Fourth Circuit recently explained:

> This constitutional right derives from the Supreme Court's holdings that the treatment an inmate receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. [*Farmer*, 511 U.S.] at 832–33. Because being assaulted in prison is not "'part of the penalty that criminal offenders pay for their offenses against society,'" *id.* at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)), prison officials are responsible for "protect[ing] prisoners from violence at the hands of other prisoners." *Id* at 833 (citations and internal quotation marks omitted).

*Id.* at 346.

Further, the *Danser* court said,

> An Eighth Amendment claim of this nature requires proof of two elements to establish deprivation of a constitutional right. [*Farmer*, 511 U.S.] at 834; *Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 723 (4th Cir. 2010). First, a prisoner must establish a serious deprivation of his rights in the form of a "serious or significant physical or emotional injury."[] *Brown*, 612 F.3d at 723; *see also De'lonta v. Johnson*, 708 F.3d 520, 525 (4th Cir. 2013). . . . The second element . . . requires that a plaintiff show that the prison official allegedly violating the plaintiff's constitutional rights had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (citation and internal quotation marks omitted). In this context, the required state of mind that must be established is a "deliberate indifference to inmate health or safety." *Id.* (citations omitted).

*Id.* at 346-347.

In order to prevail on an Eighth Amendment claim of failure to protect from violence, Plaintiff must establish that defendants exhibited deliberate or callous indifference to a specific known risk of harm. *See Pressly v. Hutto*, 816 F. 2d 977, 979 (4th Cir. 1987).

> Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penologicial objective, any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.

*Farmer* 511 U.S. at 833–34 (citations omitted). A prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837; *see also Rich v. Bruce*, 129 F. 3d 336, 339–40 (4th Cir. 1997)

Here, it is undisputed that plaintiff's injuries qualify as "significant" under the first element of the *Farmer* test. It is the second element that forms the core question and requires plaintiff to show that defendants had a "sufficiently culpable state of mind." Evidence concerning "constructive notice" of a risk of harm generally is insufficient to establish deliberate indifference. *Farmer* at 840–43.

There simply is no indication that Welsh had advance word from the plaintiff or anyone else that plaintiff was in particular danger of assault by Jones or any other inmate. Plaintiff's claim that Welsh was "negligent" in failing to search Jones prior to escorting him from the recreation cage, and/or in failing to comply with DOC policy that segregation inmates not be permitted to carry additional clothing with them to or from recreation, is insufficient to state an Eighth Amendment claim. Demonstration of negligence does not suffice to show a claim of deliberate indifference. *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). Further, an official's failure to ameliorate a significant risk that he "should have perceived but did not" also will not give rise to an Eighth Amendment Claim. *Farmer*, 511 U.S. at 838; *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) ("'It is not enough that the [defendant] *should* have recognized'" a substantial risk of harm. (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)).

The uncontradicted evidence before the Court demonstrates that plaintiff suffered a spontaneous violent attack at the hands of Jones. Officers responded quickly and reasonably to the attack by securing other inmates in the area, directing Jones to cease the attack, and applying multiple bursts of pepper spray to gain Jones' compliance with the demands to cease the attack. There simply is no evidence that officers deliberately were indifferent to a significant risk of harm.

3. Denial of Medical Care

In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner

plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or to ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F.3d 101, 105 (4th Cir. 1995) quoting *Farmer* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000), citing *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

Plaintiff's injury is objectively serious; however, the evidence presented establishes that correctional officers did not recklessly refuse treatment. Plaintiff immediately was taken to the medical department and assessed by medical staff, who made the determination of what type of treatment he required and where that treatment could be administered. Defendants did not

interfere in that treatment plan, nor did they have responsibility to oversee the treatment plan. Plaintiff's claim that correctional defendants obstructed his medical care in any way is belied by the record.

Based upon the undisputed, objective evidence in the record, defendants are entitled to judgment in their favor. The court need not address defendants' contention that plaintiff failed to exhaust his administrative remedies or their claims they are entitled to qualified immunity. A separate order follows.

1/22/15
Date

Paul W. Grimm
United States District Judge